IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 18 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:20CR20 |
| | ) | |
| v. | ) | In violation of: |
| | ) | |
| JEFFREY W. THARPE, | ) | 26 U.S.C. § 7201 |
| Defendant. | ) | 18 U.S.C. § 2 |
| | ) | 26 U.S.C. § 7212(a) |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

**Individuals, Entities, and Definitions**

1. Defendant **JEFFREY W. THARPE** resided in Charlotte County, Virginia within the Western District of Virginia.

2. T.T. was the spouse of **JEFFREY W. THARPE**. The couple was married from approximately 2000 until approximately August 2019.

3. From approximately November 2000 through at least September 2013, Shearin Construction, Inc. ("Shearin Construction") was an excavating and heavy construction business with its principal place of business in Charlotte County, Virginia, within the Western District of Virginia.

4. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering the federal tax laws of the United States and for the collection of taxes owed to the United States.

5. Domestic financial institutions were required by federal law to file with the Financial Crimes Enforcement Network a Form 104 (also known as a Currency Transaction Report or "CTR") for each financial transaction that involved United States currency in excess of $10,000. Such financial transactions included deposits, withdrawals, or exchanges of currency, or other transactions involving the physical transfer of currency from one person to another.

### JEFFREY W. THARPE's Attempts to Conceal Assets

6. **JEFFREY W. THARPE** caused T.T. to act as a nominee owner, that is, an owner in name, but not in reality, of Shearin Construction. **JEFFREY W. THARPE** instructed T.T. to register all aspects of the business in her name, including as the only officer on its incorporation records and as the sole signer on its bank accounts. However, **JEFFREY W. THARPE** retained control over all aspects of the business. While **JEFFREY W. THARPE** controlled Shearin Construction, he failed to associate himself with the business on paperwork including its articles of incorporation and bank accounts, thus making it appear to creditors, including the IRS, that he had no ownership interest in the company or its funds.

7. **JEFFREY W. THARPE** also caused T.T. to act as the nominee owner of various personal assets, such as real estate and vehicles, of which **JEFFREY W. THARPE** was the actual owner.

8. During the time that Shearin Construction operated, **JEFFREY W. THARPE** did not have signature authority on any personal or business bank accounts.

### Shearin Construction's History of
### Non-Compliance with Its Employment Tax Responsibilities

9. The Federal Insurance Contribution Act ("FICA") required employers to withhold Medicare and Social Security taxes from their employees' wages. The Internal Revenue Code also required employers to withheld federal income taxes from their employees' wages.

Collectively these taxes are known as "trust fund taxes" because employers, who hold these taxes in trust for the United States, were required to pay them over to the IRS on behalf of their employees.

10. Every employer must have had at least one person with the obligation to collect, account for, and pay over trust fund taxes. Such persons are called "responsible persons." **JEFFREY W. THARPE** was a responsible person obligated to withhold trust fund taxes from Shearin Construction employees' wages and to pay over the trust fund taxes to the IRS.

11. When a responsible person willfully failed to pay over trust fund taxes, the internal revenue laws allowed the IRS to impose a penalty on each responsible person, individually, in an amount equal to the unpaid trust fund taxes. This penalty is known as the Trust Fund Recovery Penalty ("TFRP").

12. In addition to trust fund taxes, the Internal Revenue Code also required employers to pay an employer's share of employees' FICA taxes to the IRS. Collectively, the combined employees' trust fund taxes and employer's share of FICA taxes are referred to as "employment taxes."

13. For employers whose annual liability for trust fund taxes is greater than $1,000, responsible persons were required to report the employment taxes due for the employer on an Employer's Quarterly Federal Tax Return ("Form 941"). The Form 941 was due at the end of the month following the end of each calendar quarter and reported the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of employment taxes due, and the total tax deposits the employer made with the IRS.

14. **JEFFREY W. THARPE** caused trust fund taxes to be withheld from Shearin Construction's employees' wages but failed to fully pay those trust fund taxes over to the IRS for

the third employment tax quarter of 2002 through the third quarter of 2005, the first quarter of 2007 through the fourth quarter of 2007, and the first quarter of 2012 through the third quarter of 2013, among other employment tax quarters. **JEFFREY W. THARPE** also failed to fully pay over to the IRS Shearin Construction's employer's share of employment taxes for these quarters.

15.   From the third employment tax quarter of 2002 through at least the third quarter of 2013, Shearin Construction failed to file timely Forms 941 with the IRS.

16.   In or about February 2007, the IRS made assessments against Shearin Construction for the following employment tax quarters and for the following amounts and mailed notice that it made assessments for these quarters to Shearin Construction:

| Employment Tax Quarter | Employment Tax Assessed |
| --- | --- |
| First Employment Tax Quarter of 2003 (Quarter Ending Date March 31, 2003) | $11,122.89 |
| Second Employment Tax Quarter of 2003 (Quarter Ending Date June 30, 2003) | $11,122.89 |
| Third Employment Tax Quarter of 2003 (Quarter Ending Date September 30, 2003) | $11,122.89 |
| Fourth Employment Tax Quarter of 2003 (Quarter Ending Date December 31, 2003) | $11,122.89 |
| First Employment Tax Quarter of 2004 (Quarter Ending Date March 31, 2004) | $18,455.16 |
| Second Employment Tax Quarter of 2004 (Quarter Ending Date June 30, 2004) | $18,455.16 |
| Third Employment Tax Quarter of 2004 (Quarter Ending Date September 30, 2004) | $18,455.16 |
| Fourth Employment Tax Quarter of 2004 (Quarter Ending Date December 31, 2004) | $18,455.16 |

17.   As of July 14, 2015, the IRS issued a Notice of Levy reporting the following assessments for employment taxes, interest, and penalties for the employment tax quarters and amounts, among others:

| Employment Tax Quarter | Unpaid Balance |
|---|---|
| Third Employment Tax Quarter of 2002 (Quarter Ending Date September 30, 2002) | $23,353 |
| Fourth Employment Tax Quarter of 2002 (Quarter Ending Date December 31, 2002) | $15,990 |
| First Employment Tax Quarter of 2003 (Quarter Ending Date March 31, 2003) | $30,493 |
| Second Employment Tax Quarter of 2003 (Quarter Ending Date June 30, 2003) | $30,173 |
| Third Employment Tax Quarter of 2003 (Quarter Ending Date September 30, 2003) | $29,877 |
| Fourth Employment Tax Quarter of 2003 (Quarter Ending Date December 31, 2003) | $29,624 |
| First Employment Tax Quarter of 2004 (Quarter Ending Date March 31, 2004) | $48,583 |
| Second Employment Tax Quarter of 2004 (Quarter Ending Date June 30, 2004) | $48,075 |
| Third Employment Tax Quarter of 2004 (Quarter Ending Date September 30, 2004) | $47,603 |
| Fourth Employment Tax Quarter of 2004 (Quarter Ending Date December 31, 2004) | $47,297 |
| First Employment Tax Quarter of 2005 (Quarter Ending Date March 31, 2005) | $73,168 |
| Second Employment Tax Quarter of 2005 (Quarter Ending Date June 30, 2005) | $93,029 |
| Third Employment Tax Quarter of 2005 (Quarter Ending Date September 30, 2005) | $125,815 |
| First Employment Tax Quarter of 2007 (Quarter Ending Date March 31, 2007) | $118,043 |
| Second Employment Tax Quarter of 2007 (Quarter Ending Date June 30, 2007) | $55,880 |
| Third Employment Tax Quarter of 2007 (Quarter Ending Date September 30, 2007) | $36,433 |
| Fourth Employment Tax Quarter of 2007 (Quarter Ending Date December 31, 2007) | $62,227 |
| First Employment Tax Quarter of 2012 (Quarter Ending Date March 31, 2012) | $2,346 |
| Second Employment Tax Quarter of 2012 (Quarter Ending Date June 30, 2012) | $6,015 |
| Third Employment Tax Quarter of 2012 (Quarter Ending Date September 30, 2012) | $6,556 |
| Fourth Employment Tax Quarter of 2012 (Quarter Ending Date December 31, 2012) | $6,252 |
| First Employment Tax Quarter of 2013 (Quarter Ending Date March 31, 2013) | $6,674 |

| Second Employment Tax Quarter of 2013 (Quarter Ending Date June 30, 2013) | $450 |
|---|---|
| Third Employment Tax Quarter of 2013 (Quarter Ending Date September 30, 2013) | $205 |
| **Total** | **$944,161** |

**The IRS's Efforts to Collect Shearin Construction's Outstanding Employment Taxes**

18. On or about January 25, 2014, an IRS Revenue Officer was assigned to collect Shearin Construction's unpaid employment taxes.

19. On or about April 3, 2014, an IRS Revenue Officer attempted to contact Shearin Construction at its principal place of business regarding the company's unpaid employment tax liabilities. The Revenue Officer taped his business card and a Notice of Intent to Levy to the front entrance of **JEFFREY W. THARPE** and T.T.'s residence, which was also the company's principal place of business. The Notice of Intent to Levy informed Shearin Construction of the IRS's intent to levy its assets in order to satisfy unpaid employment tax liabilities for the third quarter of 2002 through the fourth quarter of 2004 and the first quarter of 2007 through the fourth quarter of 2007, among others.

20. On or about May 12, 2014, an IRS Revenue Officer spoke with T.T. by phone and explained that Shearin was not in compliance with its employment tax obligations and that the TFRP could be assessed against a "responsible person" at Shearin Construction.

21. On or about June 19, 2014, the IRS issued a Notice of Levy to Benchmark Community Bank, which directed the bank to turn over to the IRS the funds then in Shearin Construction's accounts. On or about July 14, 2014, Benchmark Community Bank mailed the IRS a check in the amount of $133.52, which constituted all of the funds then in Shearin Construction's accounts.

22. On or about July 22, 2014, the IRS issued a second Notice of Levy to Benchmark Community Bank, which directed the bank to turn over to the IRS the funds then in Shearin Construction's accounts.

23. On or about February 23, 2015, the IRS mailed a Notice of Intent to Levy to Shearin Construction at its principal place of business, which shared an address with the residence of **JEFFREY W. THARPE** and T.T., notifying the company of the IRS's continued intent to levy its assets in order to collect unpaid employment taxes, interest, and penalties for the first quarter of 2005 through the third quarter of 2005 and the first quarter of 2012 through the third quarter of 2013, among others. **JEFFREY W. THARPE** signed the United States Postal Service Certified Mail return receipt acknowledging receipt of the Notice of Intent to Levy dated February 23, 2015.

24. On or about April 7, 2015, the IRS mailed a Notice of Intent to Levy to Shearin Construction at its principal place of business notifying the company of the IRS's continued intent to levy its assets in order to collect unpaid employment taxes, interest, and penalties for the third quarter of 2005. **JEFFREY W. THARPE** signed the United States Postal Service Certified Mail return receipt acknowledging receipt of the Notice of Intent to Levy dated April 7, 2015.

25. On or about that same date, the IRS issued a third Notice of Levy to Benchmark Community Bank, which directed the bank to turn over to the IRS all of the funds then in Shearin Construction's accounts.

26. On or about May 14, 2015, the IRS mailed notice to T.T. at her residence, which was also the residence of **JEFFREY W. THARPE**, informing of the IRS's proposed TFRP assessment in the amount of $175,699.90 against T.T. personally. The TFRP assessment

covered unpaid trust fund taxes for the first quarter of 2003 through the third quarter of 2005 and the first quarter of 2012 through the third quarter of 2013.

27. On or about July 14, 2015, the IRS issued a Notice of Levy to Carter Bank & Trust, which directed the bank to turn over to the IRS the funds then in Shearin Construction's account.

28. On or about November 25, 2015, the IRS mailed a Notice of Intent to Levy to T.T. at her residence, which was also the residence of **JEFFREY W. THARPE**, notifying of the IRS's intent to levy personal assets in order to collect unpaid TFRP liabilities. **JEFFREY W. THARPE** signed the United States Postal Service Certified Mail return receipt acknowledging receipt of the Notice of Intent to Levy dated November 25, 2015.

### COUNT ONE
(Tax Evasion – Employment Taxes for Third Quarter 2002
through Third Quarter 2005, First Quarter 2007 through Fourth
Quarter 2007, and First Quarter 2012 through Third Quarter 2013)

29. Paragraphs 1 through 28 are re-alleged and incorporated by reference herein.

30. Beginning on or about February 27, 2007 and continuing until at least on or about July 8, 2019, in the Western District of Virginia and elsewhere, the defendant, **JEFFREY W. THARPE**, did willfully attempt to evade and defeat the payment of a substantial portion of the employment taxes due and owing by Shearin Construction to the United States of America for the third quarter of 2002 through the third quarter of 2005, the first quarter of 2007 through the fourth quarter of 2007, and the first quarter of 2012 through the third quarter of 2013, by committing the following affirmative acts, among others:

    a. Placing and holding Shearin Construction in the name of T.T. as a nominee;

    b. Opening and maintaining Shearin Construction's bank accounts with T.T. as the sole signer;

8

    c. Ordering T.T. not to pay Shearin Construction's employment taxes;

    d. Withdrawing large amounts of cash from Shearin Construction's bank accounts after receiving notices from the IRS of collection activity pertaining to Shearin Construction's unpaid employment taxes;

    e. Keeping cash and checks in amounts less than $10,000 so as not to trigger the filing requirement of a CTR as mentioned in Paragraph 5;

    f. On or about July 8, 2019, falsely telling IRS Criminal Investigation Special Agents that he had nothing to do with the formation or operations of Shearin Construction.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

### COUNT TWO
(Corrupt Endeavor to Obstruct or Impede the
Due Administration of the Internal Revenue Laws)

31. Paragraphs 1 through 28 are re-alleged and incorporated by reference herein.

32. Beginning no later than on or about May 12, 2014, and continuing until at least on or about July 8, 2019, in the Western District of Virginia and elsewhere, the defendant, **JEFFREY W. THARPE**, knowing of and reasonably foreseeing the IRS's efforts to collect Shearin Construction's employment taxes and the TFRP against T.T. described above in Paragraphs 18 through 28, did corruptly obstruct and impede, and corruptly endeavor to obstruct and impede, the due administration of the internal revenue laws, that is, the IRS's efforts to collect Shearin Construction's employment taxes and the collection of the TFRP against T.T., committing and causing to be committed the following acts, among others, each such act having

a nexus to the IRS's efforts to collect Shearin Construction's employment taxes and the TFRP against T.T.:

    a. On or about June 30, 2014, **JEFFREY W. THARPE** encumbered real property held in T.T.'s name with a fictitious $50,000 note;

    b. On or about September 15, 2014, **JEFFREY W. THARPE** caused T.T. to transfer to him the real property referenced in Paragraph 32.a, which was allegedly sold for consideration of $57,742.60 when, in fact, **JEFFREY W. THARPE** never paid T.T. that amount for the property;

    c. On or about the same date of September 15, 2014, **JEFFREY W. THARPE** encumbered the real property referenced in Paragraphs 32.a and b with a fictitious $60,000 note;

    d. On or about October 2, 2014, **JEFFREY W. THARPE** caused T.T. to transfer to him a second parcel of real property, which was held solely in her name and which was allegedly sold for consideration of $24,900 when, in fact, **JEFFREY W. THARPE** never paid T.T. that amount for the property;

    e. On or about the same date of October 2, 2014, **JEFFREY W. THARPE** encumbered the real property referenced in Paragraph 32.d with a fictitious $24,900 note;

    f. On or about October 22, 2014, **JEFFREY W. THARPE** caused T.T. to transfer to him a third parcel of real property, which was held solely in her name and which was allegedly sold for consideration of $100,000 when, in fact, **JEFFREY W. THARPE** never paid T.T. that amount for the property;

g. On or about the same date of October 22, 2014, **JEFFREY W. THARPE** encumbered the real property referenced in Paragraph 32.f with a fictitious $100,000 note;

h. On or about November 3, 2014, **JEFFREY W. THARPE** caused T.T. to transfer to him a fourth parcel of real property, which was held solely in her name and which was allegedly sold for consideration of $175,000 when, in fact, **JEFFREY W. THARPE** never paid T.T. that amount for the property;

i. On or about the same date of November 3, 2014, **JEFFREY W. THARPE** encumbered the real property referenced in Paragraph 32.h with a fictitious $175,000 note;

j. On or about September 18, 2014, **JEFFREY W. THARPE** opened a bank account at Wells Fargo Bank in his name (X8325), on which he was the sole signer;

k. On or about July 8, 2019, **JEFFREY W. THARPE** falsely told IRS Criminal Investigation Special Agents that he had nothing to do with the formation or operations of Shearin Construction.

In violation of Title 26, United States Code, Section 7212(a).

A TRUE BILL, this __18__ day of __June__, 2020.

                                    /s/ *Grand Jury Foreperson*
                                    GRAND JURY FOREPERSON

                                    _____
                                    THOMAS T. CULLEN
                                    UNITED STATES ATTORNEY