CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 13 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

UNITED STATES OF AMERICA )
) Case No. 4:20-CR-20
v. )
) By: Michael F. Urbanski
JEFFREY W. THARPE, ) Chief United States District Judge
)
Defendant )

## MEMORANDUM OPINION

This matter comes before the court on defendant Jeffrey W. Tharpe's motion in limine to exclude certain categories of evidence. ECF No. 52. Because the evidence is either intrinsic to the crimes charged or is permitted under Federal Rule of Evidence 404(b)(2), defendant's motion is **DENIED**.

I.

On June 17, 2020, a federal grand jury returned a two-count indictment charging Tharpe with one count of tax evasion in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2, and one count of corrupt endeavor to obstruct or impede the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a).

The charges arise out of the failure of Shearin Construction ("Shearin") to pay employment taxes and Tharpe's alleged role as a "responsible person" for Shearin. ECF No. 2, at 3. Count One charges Tharpe with willfully attempting to evade and defeat the payment of a portion of the employment taxes due by Shearin for certain quarters between 2002 and 2013. The indictment charges the following affirmative acts: Tharpe placed Shearin in the name of a nominee, Tricia Tharpe; opened Shearin bank accounts with the nominee as the

sole signer; ordered the nominee not to pay Shearin's employment taxes; withdrew significant sums of cash from Shearin accounts after being notified of Internal Revenue Service (IRS) collection activity; kept cash and check deposits in below-threshold amounts to skirt bank reporting requirements; and falsely stated that he had nothing to do with Shearin's formation or operations to IRS Criminal Investigation Special Agents.

In 2014, the IRS initiated "concerted efforts to collect Shearin's unpaid employment taxes" from the alleged nominee. Gov't Resp. in Opp'n, ECF No. 55, at 2. Count Two charges that, to obstruct these collection efforts, Tharpe encumbered several pieces of real property held by the nominee with fictitious notes; transferred the property to himself in sales for which no consideration was paid; and then again encumbered the property with additional fictitious notes. Id. at 2.

The government filed three notices, ECF Nos. 33, 46, and 51, pursuant to Rule 404(b) of the Federal Rules of Evidence. In the first notice, ECF No. 33, the government states its intention to admit certain evidence related to the tax history of Tharpe's companies before and after Shearin; Tharpe's use of checks to Tricia Tharpe as a method of withdrawing cash from the company he ran after Shearin; Tharpe's placement of additional fictitious notes on real property owned by Tricia Tharpe in 2013; Tharpe's sale of certain parcels of real property from Count Two; and Tharpe's abusive and controlling behavior toward Tricia Tharpe.

In the second notice, ECF No. 46, the government indicates it plans to admit evidence relating to Tharpe's directions to Tricia Tharpe regarding payment to creditors; the purchase by Shearin of a note secured by the deed to Tharpe's house; and that certain notes secured by

2

Tharpe's real property were allegedly made by a relative who lacked competency to participate in the transaction.

In the third notice, ECF No. 51, the government states its intention to introduce evidence that Tharpe directed Shearin's accountant to reduce the company's tax bill.

On December 19, 2022, Tharpe filed a motion in limine requesting the exclusion of all of the evidence contained in the government's Rule 404(b) notices. ECF No. 52. On December 22, 2022, the government filed its response in opposition, ECF No. 55, to Tharpe's motion. On Tuesday, January 3, 2023, the court held a hearing on this and other outstanding motions. Upon consideration of the parties' arguments, a thorough review of the record, and for the reasons stated below, Tharpe's motion in limine is **DENIED**.

## II.

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "Rule 404(b) is a rule of inclusion, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Moore, 709 F.3d 287, 295 (4th Cir. 2013) (quoting United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011)). However, if the government intends to offer evidence under this rule at trial, then it must, as it has done in this case, give the defendant "reasonable notice of the general nature of such evidence" beforehand. Fed. R. Evid. 404(b)(2).

The Fourth Circuit has outlined a four-factor test that must be satisfied before a court can properly admit evidence of prior bad acts under Rule 404(b):

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. [Finally], (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). The fourth factor requires that all admitted Rule 404(b) evidence must satisfy Rule 403. United States v. Williams, 740 F.3d 308, 314 (4th Cir. 2014). Rule 403 instructs the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The first Queen requirement dictates that "[f]or evidence to be relevant, it must be 'sufficiently related to the charged offense.'" United States v. McBride, 676 F.3d 385, 397 (4th Cir. 2012) (quoting United States v. Rawle, 845 F.2d 1244, 1247 n.3 (4th Cir. 1988)); see Fed. R. Evid. 401(a), (b). "The more closely . . . the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." Id. "[E]vidence, to be relevant, 'need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Byers, 649 F.3d at 208 (quoting United States v. Aramony,

4

88 F.3d 1369, 1377 (4th Cir. 1996)). Queen is instructive of what the Fourth Circuit envisions for the relevance prong. There, Queen was charged with witness tampering, and in its prosecution, the government sought to introduce prior acts of witness tampering. Queen, 132 F.3d at 992-93. Unsurprisingly, the Fourth Circuit held that these past acts of witness tampering were admissible under Rule 404(b) to show Queen's intent to commit the charged witness tampering as it was virtually the same conduct. Id. at 997.

Under the second Queen requirement, evidence is considered necessary "where it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991) (internal quotation marks and citation omitted); see United States v. Smith, 441 F.3d 254, 262 (4th Cir. 2006). Significantly, courts must determine whether prior bad acts evidence is "necessary" under Rule 404(b) in "light of other evidence available to the government." Queen, 132 F.3d at 998 (internal quotation marks omitted). Thus, "as the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases." United States v. Lighty, 616 F.3d 321, 354 (4th Cir. 2010) ("[I]f the Rule 404(b) evidence is entirely cumulative to other non-Rule 404(b) evidence available to the government, the Rule 404(b) evidence may not meet the necessity prong."). Of course, the inverse is true as well, such that Rule 404(b) evidence is more likely to be considered necessary where the evidence intrinsic to the crime at issue is sparse or weak. See United States v. Wilson, 624 F.3d 640, 654 (4th Cir. 2010); United States v. DiZenzo, 500 F.2d 263, 266 (4th Cir. 1974).

The Third Queen requirement is that the evidence must be reliable. Evidence is reliable "unless it is so preposterous that it could not be believed by a rational and properly instructed

5

juror." United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008) (internal citations omitted). Generally, the testimony of a witness testifying under oath and subject to cross examination is reliable, even where the witness' testimony is "pursuant to agreements for favorable treatment in their [own] cases." Queen, 132 F.3d at 998.

Under the fourth Queen requirement, "[e]vidence sought to be admitted under Rule 404(b) must also satisfy [Fed. R. Evid.] Rule 403[ ] . . ." Id. Under Rule 403, "damage to a defendant's case is not a basis for excluding probative evidence" because "[e]vidence that is highly probative invariably will be prejudicial to the defense." United States v. Grimmond, 137 F.3d 823, 833 (4th Cir. 1998). In other words, "general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence. Evidence may be excluded under Rule 403 only if the evidence is unfairly prejudicial and, even then, only if the unfair prejudice substantially outweighs the probative value of the evidence." Siegel, 536 F.3d at 319. Unfair prejudice exists "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." Id. Generally speaking, "bad acts" evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995).

However, "not all prior 'bad act' evidence is encompassed by Rule 404(b)." United States v. Brizuela, 962 F.3d 784, 793 (4th Cir. 2020) (internal quotations omitted). Instead, Rule 404(b) "is only applicable when the challenged evidence is extrinsic, that is, separate from or unrelated to the charged offense." Id. (internal quotations omitted). In the Fourth Circuit,

6

"conduct is intrinsic, and not barred by Rule 404(b), when it 'arose out of the same . . . series of transactions as the charged offense, . . . or is necessary to complete the story of the crime on trial.'" Id. (quoting United States v. Kennedy, 32 F.3d 876, 886 (4th Cir. 1994)). Though evidence of other bad acts that are intrinsic is not subject to Rule 404(b)'s limitations, such evidence must still satisfy Rule 403's requirement that its prejudicial value not outweigh its probative value. United States v. Seabolt, 554 F. App'x. 200, 206 (4th Cir. 2014).

The court, therefore, must engage in a two-step inquiry. If a party seeks to introduce evidence of a party's prior bad acts, the court must first determine whether that evidence is intrinsic or extrinsic to the case before it. If the proposed evidence is intrinsic, then it is admissible. If the proposed evidence is extrinsic, then the court must proceed to consider whether the evidence is admissible under Rule 404(b). No matter the category into which the evidence falls, the court must weigh its probative value under Rule 403.

### III.

Tharpe argues that no evidence pertaining to his conduct is relevant to proving a violation of tax laws "unless and until" the government introduces evidence that Tharpe controlled Tricia Tharpe. ECF No. 52, at 2. Even assuming that were the case, the government's anticipated 404(b) evidence alone—and discussed herein—is replete with evidence that the government anticipates will demonstrate Tharpe's control of Tricia Tharpe and Shearin. ECF No. 55 at 12, 13, 14, 15, 16, 17, 23.

Tharpe further contends that all ten categories of evidence contained in the government's three notices fail to meet the criteria for admissibility under Rule 404(b) and should be excluded under Rule 403 due to the "risk that the jury will be excited to irrational

7

behavior." Motion in limine, ECF No. 52, at 2-3. The government argues that nine of the ten categories of evidence are intrinsic to the crimes charged in the indictment or, in the alternative, are all admissible under Rule 404(b). ECF No. 55, at 1. Each category of evidence is discussed in turn below.

## A. Tharpe's Tax History at Tharpe Excavating and Subsequent IRS Penalty.

The government indicates that it intends to introduce evidence tending to show the following: that Tharpe owned and operated Tharpe Excavating, another construction company, before Shearin began operations; that Tharpe Excavating failed to pay all of its employment taxes between certain quarters of 1998 and 2000; that the IRS initiated collection actions against Tharpe Excavating, culminating in a Trust Fund Recovery Penalty (TFRP) assessed against Tharpe in June 2002 and a Federal Tax Lien filed against Tharpe's property—including his personal residence—in May 2003; and that, within a matter of months after Tharpe Excavation ceased operations, Shearin began to conduct the same types of work with some of the same people and equipment, but in the name of Tharpe's then-spouse, Tricia Tharpe. ECF No. 33, at 2-3.

This evidence is intrinsic, as it is necessary to complete the story of the crime charged in the indictment. See Brizuela, 962 F.3d at 795. In United States v. Cooper, the defendant was charged with violating the Clean Water Act by discharging improperly treated sewage from the trailer park he owned into a nearby creek. 482 F.3d 658, 660 (4th Cir. 2007). Cooper had a lengthy history with the Virginia Department of Environmental Quality, which had recorded discharge violations, initiated an enforcement action, and entered into a Consent Order with the defendant. Id. at 661. The district court properly admitted evidence of this history, as it

8

was "inextricably intertwined" with the Clean Water Act charges and explained how Cooper came to be discharging sewage without a permit. Id. at 663. Likewise, a full recital of the story of the crimes with which Tharpe is charged involves recounting his history with the IRS and employment taxes at Tharpe Excavating. Tharpe, freshly penalized by the IRS for failing to pay employment taxes, allegedly set up a company conducting similar work in the name of Tricia Tharpe. His experiences at Tharpe Excavating suggested that that any IRS penalties and collection actions would be levied against Tricia Tharpe instead of himself. Just as Cooper's prior history with the Virginia Department of Environmental Quality was "inextricably intertwined" with why Cooper was discharging sewage without a permit, id., Tharpe's tax history at Tharpe Excavation is inextricably intertwined with Tharpe's motivation to put Shearin in Tricia Tharpe's name.

The probative value of this evidence outweighs any prejudicial effect under Rule 403. Where evidence of prior bad acts is probative and does not involve conduct more "sensational or disturbing than the crimes with which [the defendant] was charged," it is generally not barred by Rule 403. United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995); see also United States v. Parks, 849 F. App'x 400, 403 (4th Cir. 2021). Here, Tharpe is charged with tax evasion at Shearin. Additional evidence of failing to pay employment taxes owed by Tharpe Excavation will not cause unfair prejudice.

## B. Tharpe's Tax History at J.W. Tharpe Construction, Inc.

If the defense opens the door, the government intends to introduce evidence about Tharpe's tax history at J.W. Tharpe Construction, Inc., the company he opened shortly after Shearin was administratively dissolved. ECF No. 55, at 25. This new company allegedly used

9

the same office space and employed several of the same individuals as Shearin. ECF No. 55, at 25. The government intends to show that, from March 2015 to October 2019, Tharpe did not file employment tax returns on behalf of J.W. Tharpe Construction, Inc., and, prior to late 2019, the company neither withheld employment taxes nor issued Form W-2s. ECF No. 33, at 3-4.

The government appears to concede that Tharpe's alleged conduct with respect to taxes at J.W. Tharpe Construction, Inc. is "distinct enough" from the charged conduct such that it is not intrinsic evidence. ECF No. 55, at 25. Therefore, the court considers only whether it is admissible under Rule 404(b).

The government offers this evidence not to show propensity to evade taxes, but instead to show intent, plan, and absence of mistake. ECF No. 33, at 4. Tharpe's continued failure to withhold and pay employment taxes after not just one, but two companies were subject to IRS collection actions is highly probative that this failure was not simply unintentional oversight. Although Tharpe does not contend that evidence on this matter would lack reliability, its reliability may be assessed at trial. Lastly, the probative value of this evidence outweighs any potential unfair prejudice, as the evidence the government will introduce will be no more disturbing than other evidence the government intends to introduce at trial. Boyd, 53 F.3d at 637.

## C. Tharpe's Issuance of Checks from J.W. Tharpe Construction, Inc. to Tricia Tharpe.

The indictment charges Tharpe with evading taxes by, in part, indirectly withdrawing cash from Shearin's accounts in amounts small enough to avoid triggering bank reporting requirements. ECF No. 2, at 9. Tharpe allegedly accomplished this by issuing and cashing

checks to Tricia Tharpe and others. ECF No. 55, at 21. In its first 404(b) notice, the government states its intent to introduce evidence showing that this practice of cash withdrawals continued at J.W. Tharpe Construction, Inc. ECF No. 33, at 4.

Because this continued practice of concealed withdrawals is part of the "same series of transactions as the charged offenses," evidence of these checks from J.W. Tharpe Construction, Inc. is admissible as intrinsic evidence. United States v. Otuya, 720 F.3d 183, 188 (4th Cir. 2013). These checks continued Tharpe's scheme of using Tricia Tharpe to withdraw cash from his corporations and place it out of the IRS's reach.

This evidence is also admissible under Rule 404(b). It is offered not for propensity, but to prove Tharpe's identity as the recipient of the cashed funds, Tharpe's motive for writing these checks, and Tharpe's opportunity to extract cash from the company. The close similarity between the checks written by J.W. Tharpe Construction, Inc. and Shearin makes this evidence even more relevant. Each of these purposes goes to the elements of the offense that the prosecution must prove. The reliability of this evidence may be assessed at trial. Finally, the probative value of this evidence outweighs any prejudicial effect. Because the government already intends to introduce evidence of Shearin's checks, these nearly identical checking practices will not be more disturbing than the charged conduct. Boyd, 53 F.3d at 637.

### D. Tharpe Encumbered Real Property with Fictitious Deeds of Trust Prior to June 30, 2014.

Count Two of the indictment charges Tharpe with obstructing the IRS's efforts to collect Shearin's employment taxes and impose a TFRP against Tricia Tharpe. ECF No. 2, at 10. Specifically, the indictment alleges that Tharpe encumbered a parcel of real property owned by Tricia Tharpe with a fictitious deed of trust on June 30, 2014. Id. In its first 404(b) notice,

11

the government claims that Tharpe placed similar fictitious deeds of trust on two other parcels of real property on October 13 and 31, 2013. ECF No. 33, at 4-5. Per the indictment, Tharpe later caused Tricia Tharpe to transfer all three parcels to him via sham sales in which he paid no consideration. ECF No. 2, at 10-11.

Because the October 2013 deeds of trust were part of the "same series of transactions as the charged offenses," they are admissible as intrinsic evidence. Otuya, 720 F.3d at 188. A prior bad act is part of the same series of transactions if it, along with the charged offense, forms part of a "single criminal episode" Id. In Otuya, fraudulent activities from different years were part of a single criminal episode because they involved the same victim, same basic action, and the same conspirators. Id. These same factors are present here: Tharpe took identical actions to reduce the IRS's perception of the value of property owned by Tricia Tharpe with respect to all three properties.

Even if this were not intrinsic evidence, it would still be admissible under Rule 404(b). This evidence tends to show Tharpe's plan and motive to obstruct the IRS's collection efforts by reducing the perceived value of the properties. This evidence is relevant, as Tharpe's conduct regarding the 2013 deeds of trust is both close in time and nearly identical to his conduct in relation to the 2014 deed of trust. See Queen, 132 F.3d at 997. This evidence is necessary, as it tends to prove Tharpe's plan, an essential element of the offense. Again, the reliability of this evidence may be assessed at trial. This category of 404(b) evidence is also not unfairly prejudicial, because it does not involve conduct more sensational than that with which Tharpe was charged. See Boyd, 53 F.3d at 637.

**E. Tharpe Sold Real Property and Deposited the Proceeds into the Bank Account of J.W. Tharpe Construction, Inc.**

12

In Count Two of the indictment, the government claims that Tharpe transferred several parcels of real property from Tricia Tharpe to himself in sham sales and subsequently encumbered these properties with fictitious deeds of trust. ECF No. 2, at 10-11. The government seeks to introduce evidence that when Tharpe then sold several of these properties, he did not use the proceeds to repay these loans, but instead deposited the proceeds into the business accounts of his new company, J.W. Tharpe Construction. ECF No. 55, at 19-20.

This evidence is intrinsic, as the disposition of the funds completes the story of Tharpe's real estate transaction history for these parcels. See Brizuela, 962 F.3d at 795. It is important context for the jury that Tharpe did not use the proceeds to repay the debts supposedly secured by the parcels, but instead used the funds to start another construction company.

Even if this evidence were an extrinsic bad act, it would still be admissible under Rule 404(b). Tharpe's disposition of these properties is relevant to proving his plan, motive, and opportunity to corruptly obstruct the IRS's collection efforts, as alleged in Count Two. The timing of these transactions enhances their relevance, as these sales occurred in the midst of IRS collection activity. See Queen, 132 F.3d at 997. The reliability of this evidence may be assessed at trial. Finally, Rule 403 is satisfied, as the probative value of this evidence outweighs any general prejudicial effect. See Boyd, 53 F.3d at 637; see also Grimmond, 137 F.3d at 833.

**F. Tharpe's Controlling and Abusive Behavior Toward Tricia Tharpe.**

The indictment alleges that Tharpe controlled Shearin everywhere but on paper. It further claims that Tharpe intentionally organized the company and its accounts under a

13

nominee, Tricia Tharpe. ECF No. 2, at 8. In its first 404(b) notice, the government indicates it anticipates introducing testimony tending to show that Tharpe was both verbally and physically abusive to Tricia Tharpe. ECF No. 33, at 5. The government argues that this testimony is relevant for demonstrating Tharpe's control over Shearin through Tricia Tharpe and how Tharpe was able to access funds from Shearin's bank accounts. Id. In its Motion in Opposition, the government indicates it now intends to elicit this category of testimony only if Tharpe first opens the door. ECF No. 55, at 23.

This evidence could involve the potential for unfair prejudice under Rule 403. Tharpe is on trial for alleged tax crimes, not domestic violence. Testimony about physical and verbal spousal abuse could be "more sensational or disturbing" than the crimes charged. Boyd, 53 F.3d at 637. However, this potential for prejudice must be weighed against the probative value of such testimony. Here, evidence of Tharpe's behavior toward Tricia Tharpe is "necessary to complete the story of the crime on trial." See Brizuela, 962 F.3d at 795. In United States v. Dumire, No. 7:15-CR-00098, 2016 WL 4507390, at *3, 10 (W.D. Va. Aug. 26, 2016), the defendant was charged with being a felon in a possession of a firearm and sought to exclude prior act evidence of domestic violence against his then-girlfriend and her mother after they had hidden his firearms. Despite its potential prejudicial effect, the court denied Dumire's motion, concluding that the domestic violence was "part and parcel of the story of his crimes." Id. at 10. The same is true here: abuse and threats of abuse with the "apparent goal of controlling [Tricia Tharpe's] behavior," ECF No. 55, at 23, are inextricably intertwined with Tharpe's alleged control over Shearin and the crimes charged.

14

Even if this evidence is extrinsic, it still is admissible under Rule 404(b). The first Queen requirement is met, as this evidence is relevant to proving Tharpe's identity as a responsible person for Shearin. See Byers, 649 F.3d at 208. The second Queen requirement is also met, as proving that Tharpe was responsible for Shearin's taxes is a critical part of the charged conduct. The third Queen requirement—reliability—is met, as any testifying witnesses will be under oath and subject to cross-examination. Queen, 132 F.3d at 998 (holding that witnesses testifying to prior acts subject to cross-examination were reliable). Finally, the court has carefully considered whether evidence of Tharpe's abusive and controlling conduct toward Tricia Tharpe should be excluded under Rule 403, as is required by the fourth Queen requirement. The court concludes that it should not. The probative value of this testimony—which forms part of the story of the crime—outweighs any prejudice.

## G. Tharpe's Directions to Tricia Tharpe Regarding Bill Payment to Creditors.

Count One of the indictment alleges that Tharpe placed Shearin in Tricia Tharpe's name, opened and maintained all of the company's accounts in Tricia Tharpe's name, and ordered her not to pay the company's employment taxes. ECF No. 2, at 8-9. The government indicates in its second 404(b) notice that it anticipates introducing evidence that Tharpe also directed Tricia Tharpe not to pay creditors in addition to the IRS. ECF No. 46, at 2-3.

This evidence is admissible as intrinsic, as it "forms an integral and natural part of the [anticipated] witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Lighty, 616 F.3d at 352. In Lighty, witness testimony about a shooting at a different time and place, and with a different motive, was too disconnected to be inextricably intertwined with the crime charged. Id. at 354. Here, on the other hand, Tharpe

15

delivered similar instructions about creditor payments to the same people and at the same company. Unlike in Lighty, where excluding the challenged testimony would leave no "gaps" in the government's case, excluding this testimony leaves open the question of why Tharpe allegedly controlled payments to the IRS and no other creditors.

Even if it were not intrinsic, this evidence would be admissible under Rule 404(b), as it tends to show intent, identity, and opportunity. This evidence is probative of a central element of the charge, as it tends to show that Tharpe was in control of Shearin and its bill-paying practices. It is reliable, as any testimony from witnesses will be under oath and subject to cross examination. Queen, 132 F.3d at 998. Finally, it is admissible under Rule 403, as evidence that Tharpe directed Tricia Tharpe not to pay other creditors is no more disturbing than allegations he directed her not to pay the IRS. Boyd, 53 F.3d at 637.

## H. Tharpe's Negotiation of the Purchase by Shearin of a Note Owed by Tharpe and Secured by a Deed of Trust on His House.

The government's second 404(b) notice indicates that it anticipates introducing testimony that Tharpe accrued a debt to a supplier secured by a $400,000 deed of trust on Tharpe's home. After the creditor indicates that it was considering legal action, Tharpe negotiated the purchase of the debt by Shearin for $277,000. Shearin never collected on this debt. ECF No. 46, at 3-4.

Evidence of the purchase of this personal debt is intrinsic, as it is necessary to complete the story of the crime. See Brizuela, 962 F.3d at 795. Specifically, it demonstrates that Tharpe controlled Shearin to such a degree that the company purchased his personal debt.

Even if this evidence were extrinsic, it is still admissible under Rule 404(b). This evidence is offered not for propensity reasons, but instead to show that Tharpe had the motive,

16

plan, and opportunity to use Shearin for his financial gain while concealing his role in the company from creditors. The evidence is therefore necessary, as it is probative of essential elements of the charges. Tharpe has raised no argument that evidence in this category is unreliable, and reliability may be assessed at trial. Finally, there is little danger of unfair prejudice here, as the creditor was repaid, even if Tharpe did not make such payments personally.

## I. Tharpe Placed Deeds of Trust on Real Estate Secured Notes Allegedly Made by a Relative Incompetent to Enter into the Transaction.

The final category of evidence in the government's second 404(b) notice pertains to the holder of the allegedly fictitious notes—Tharpe's father—placed on the real property referenced in the indictment. ECF No. 46, at 5. The government anticipates that testimony would establish that Tharpe's father lacked sufficient competency to engage in these transactions and that, by 2016, Tricia Tharpe was acting as Tharpe's father's power of attorney. ECF No. 46, at 5.

This evidence is intrinsic, as it is necessary to complete the story of the crime. These fictitious notes are central to the government's theory of corrupt intent to obstruct the administration of the internal revenue laws. Therefore, whether the alleged holder of the notes was competent to loan the funds is a necessary part of the story. See Siegel, 356 F.3d at 315-316 (holding that evidence relating to crimes by the defendant against and another person would "provide the jury with the necessary context").

The evidence regarding Tharpe's father's health is also admissible under Rule 404(b). It is probative of Tharpe's motive and opportunity to encumber the properties with fictitious loans, and therefore provides essential context of the crime. Evidence in this category would

17

be reliable, as it would be established by witnesses under oath and subject to cross examination. Queen, 132 F.3d at 998. This probative value, however, must be weighed against the risk of prejudice inherent here. Evidence that Tharpe created fictitious notes supposedly held by his father, who was suffering from dementia at the time, could be "more sensational or disturbing" than the crimes charged. Boyd, 53 F.3d at 637. However, because the father's capacity to agree to the notes is "part and parcel of the story of his crimes," Dumire, 2016 WL 4507390, at *10, the probative value outweighs the potential prejudice of this evidence. The court also notes that the government indicates it will not offer evidence about Tharpe's father's health as part of its case in chief, instead planning to introduce it only if the defense opens the door. ECF No. 55, at 24.

## J. Tharpe Instructed Shearin's Accountant to Reduce the Corporate Tax Bill.

The government's third 404(b) notice indicates that the prosecution anticipates testimony that Tharpe did not want to pay taxes and that he specifically directed Shearin's accountant to reduce the company's tax bill. ECF No. 51, at 2. The government offers this evidence to prove both that Tharpe's tax evasion was willful and that Tharpe maintained control over Shearin at all relevant times. ECF No. 55, at 16-17.

This testimonial evidence is intrinsic, as Tharpe's attitude towards taxes and control over the accountant "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Lighty, 616 F.3d at 352.

Furthermore, this evidence is admissible under Rule 404(b), as it is offered to prove willfulness, motive, opportunity, and identity as a responsible person. These non-propensity

18

purposes are important context for the crimes charged. The reliability of this evidence may be assessed at trial. Furthermore, as Tharpe's views on taxes and instruction to the accountant are not themselves crimes, the probative value of this evidence is not substantially outweighed by any potential prejudicial effect it may cause.

## IV.

For these reasons, Tharpe's motion in limine is **DENIED**.

An appropriate Order will be entered.

Entered: January 12, 2023

Michael F. Urbanski
Chief United States District Judge